# THE STATE, EX REL. MCNAMARA, v. CAMPBELL ET AL.

*Constitutional law — Date amendments effective — Not postponed by joint resolution of legislature, when — Section 1, Article XVI, Constitution, controls — Eligibility of women to office — Amended Section 4, Article XV, Constitution — Effective when adopted by electors — Term of office — Section 20, Article II, Constitution — Includes appointive officers — Chief matron of girls' industrial school — Section 2101-1, General Code (103 O. L., 881) — Appointed by board of administration — Section 1842, General Code (102 O. L., 214) — Entitled to complete term — Civil service laws inapplicable, when — Approval of salary voucher by commission.*

1. A provision in a joint resolution of the general assembly of Ohio, submitting to the electors of the state a proposed amendment to the constitution, that the same shall not go into effect until a time later than that fixed by Section 1 of Article XVI of the Constitution, is inoperative and void, unless the proposition to postpone the taking effect of such proposed amendment beyond the time named in the constitution is also submitted to the electors of the state and adopted by a majority of those voting on the proposition.

2. The amendment to Section 4, Article XIV of the Constitution, making women eligible to appointment as members of boards or officers of departments or institutions affecting or caring for women and children, became a part of the constitution when a majority of the electors of the state voting thereon adopted it, and was in full force and effect on the 23d day of December, 1913.

3. The term "officers," as used in Section 20, Article II of the Constitution, includes both appointive and elective officers.

4. Where a valid and lawful appointment was made by the Ohio board of administration, under the provisions of Section 2101-1, General Code (103 O. L., 881), and Section 1842, General Code (102 O. L., 214), before the civil service laws of the state went into operation, the person appointed is entitled to hold such office for and during the legal term thereof unless such office is abolished.

5. The civil service laws of the state have no application to such officer, and she is entitled to be paid the salary attached to that

office upon the approval of the Ohio board of administration, whether approved or not by the civil service commission of Ohio.

(No. 15267 — Decided July 1, 1916.)

IN MANDAMUS.

On the 9th day of May, 1916, the relatrix, Margaret E. McNamara, filed a petition in this court, invoking its original jurisdiction in mandamus, and asked that a writ issue commanding the defendants Z. B. Campbell and Samuel D. Webb, as members of the state civil service commission of Ohio, to certify the pay-roll of the girls' industrial school for the month of April, 1916, including therein the salary of relatrix as chief matron of that institution, and commanding the defendant A. V. Donahey, as auditor of state, to issue his warrant in her favor upon the treasurer of state for the amount of her salary for that month.

It is averred in the petition that the relatrix was appointed chief matron of the girls' industrial school on the 23d day of December, 1913; that on said day she qualified as such officer; that she has ever since continued to hold said position and discharge the duties thereof; that up until the 1st day of April, 1916, she has received the salary fixed by the Ohio board of administration for that service; that she is, and was at above-named times, a citizen of the state of Ohio; and that the girls' industrial school is an institution established by the state involving the interests and care of women and children.

It is further averred that on the 15th day of March, 1916, the state civil service commission of Ohio certified the name of the relatrix, together with the names of three candidates, for the position of chief matron, but that the Ohio board of administration made no appointment from such list or otherwise; that she continued in her office and performed the duties thereof for the month of April, 1916, and prepared and certified as managing officer of the girls' industrial school the pay-roll for April, 1916, including her own salary of $100 for that month, which pay-roll was approved by the board of administration on the 3d day of May, 1916; that all of said pay-roll was approved by the state civil service commission of Ohio except the item of her salary; and that the auditor of state on the 4th day of May, 1916, issued his warrant upon the treasurer of state for the amount certified to be due the officers and employes of the girls' industrial school on said pay-roll except the sum of $100 due the relatrix, for which amount the auditor of state refused and still refuses to issue a warrant.

The defendant A. V. Donahey, as auditor of state, filed a general demurrer to this petition. The defendants Z. B. Campbell and Samuel D. Webb, as members of the state civil service commission of Ohio, filed an answer, in the first defense of which they admit that they are the duly qualified and acting members of the state civil service commission, that their codefendant, A. V. Donahey, is the duly elected and acting auditor of state, and that the pay-roll described in the petition

was approved by them with the exception of the item named. They admit that the auditor of state refuses to issue a warrant covering this item, and deny each and every other allegation of the petition.

For a second defense they aver that the relatrix was appointed chief matron of the girls' industrial school on the 1st day of August, 1913; that thereafter she took a noncompetitive examination and passed the same with an average grade of 83.3 per cent.; that she continued in that position until the 31st day of August, 1915, when said appointment, as aforesaid made, became null and void by operation of law, and her tenure in said position under said appointment thereupon terminated and ended and the position of chief matron then and thereby became and was vacant; that on the 3d day of September, 1915, the Ohio board of administration reported her name to them, the state civil service commission, as a person holding a position in the classified service of the state, who had not passed a regular competitive examination and who had not been in the service of the state for seven years prior to the 1st day of January, 1915; that thereupon they certified to the Ohio board of administration that they were unable to furnish an eligible list from which a permanent appointment could be made, and authorized that board to fill the position by a provisional appointment until an eligible list could be furnished; and that thereupon said board on the 9th day of September, 1915, reported that it had determined to retain relatrix in the position of chief matron as the provisional appointee.

They aver that on the 4th day of March, 1916, they certified to the Ohio board of administration a list of the names of three persons who had passed a competitive examination and who were eligible for a permanent appointment to the position of chief matron, together with the name of relatrix; that on the 18th day of March, 1916, no action on said certificate having been reported, they certified to the board of administration another eligible list of names of three persons, two of whom had been certified on the prior list, together with that of relatrix, this list last certified being made necessary by the appointment to another position in the service of the state of a person whose name had been certified on the previous list; and that the Ohio board of administration never reported to them any action taken by it on the list so certified. The defendants further aver that in pursuance of law and by virtue of the power delegated to and vested in them they have adopted and promulgated Section 5 of Rule VI, which provides, among other things, that within 15 days from the date of the receipt of any certification the appointing officer shall make a report thereon to the civil service commission, and that a provisional appointment shall not be allowed to continue for more than 15 days after certification has been made from which to make a permanent appointment.

The defendants further aver that on the 27th day of April, 1916, they addressed a communication directing the attention of the board of administration to the fact that the certification aforesaid had been made and that no report thereon as re-

quired by the rules of the Ohio state civil service commission had ever been received from said board, and that the pay-roll for the position of chief matron of said institution would no longer be approved by them until a permanent appointment to said position was made from the eligible list so as aforesaid certified to the board as required by law; that no reply was made by said board to said communication; and that on the 1st day of May, 1916, they addressed a further communication calling attention of said board to Section 5 of Rule VI promulgated by them and requesting a report to be made, but that no answer had been made by said board to said last-named communication.

The relatrix filed a general demurrer to this answer, and this cause is submitted to the court upon that demurrer and upon the demurrer filed by the auditor of state to the petition.

*Mr. George B. Okey* and *Mr. John A. Shauck,* for relatrix.

*Mr. Edward C. Turner,* attorney general, and *Mr. William H. Middleton,* for defendants.

NEWMAN, J.    The demurrer of the relatrix to the separate answer of the defendants Z. B. Campbell and Samuel D. Webb, as members of the state civil service commission of Ohio, and the demurrer of the defendant A. V. Donahey, auditor of state, to the petition, search the whole record of this case.    The first question presented is whether the petition contains facts sufficient to constitute a

cause of action. According to the allegations of the petition the relatrix on the 23d day of December, 1913, was appointed chief matron of the girls' industrial school by the Ohio board of administration and her salary was fixed at the sum of $1,200 per year, which was approved by the governor. On the same day she qualified, entered upon her duties as chief matron, and has ever since continued to hold and occupy said position and discharge the duties thereof. The board of administration has not made an appointment of a successor to the relatrix, either from a certified list or otherwise. She performed her duties during the month of April, 1916, and as managing officer prepared and certified on the 30th day of April, 1916, the pay-roll of the institution, which was approved by the board of administration. The state civil service commission approved this pay-roll except as to the item of her salary. The auditor of state issued his warrant for the amounts certified to be due the officers and employes of the institution upon this pay-roll, except the sum of $100 due relatrix. It is also averred in the petition that at the date of her appointment by the board of administration she was a citizen of the state of Ohio and that the girls' industrial school is an institution established by the state involving the interests and care of women and children.

Section 2101-1, General Code (103 O. L., 881), passed April 28, 1913, reads: "The Ohio board of administration shall appoint a chief matron who shall perform such duties as may be assigned to her by the Ohio board of administration relative to

said institution." The general assembly in the
enactment of Section 1842, General Code, fixed the
term of the chief officer of this institution at four
years, unless removed for want of moral character,
incompetency, neglect of duty or malfeasance, after
opportunity to be heard, and provided for her
salary. Section 2102 *et seq.,* General Code, pre-
scribes the duties of the chief matron. It is con-
ceded, however, by counsel for the defendants that
the position is an office and the occupant is an
officer.

Section 20, Article II of the Constitution of
Ohio, is as follows: "The general assembly, in
cases not provided for in this constitution, shall
fix the term of office and the compensation of all
officers; but no change therein shall affect the
salary of any officer during his existing term,
unless the office be abolished."

It is the contention of counsel for the defendants
that this constitutional provision was mainly in-
tended to provide authority for fixing the terms
of elective officers. Both appointive and elective
officers are recognized by the constitution, but the
section we have quoted makes no distinction be-
tween the two classes and it must follow that it
includes both.

But it is urged that the relatrix could not avail
herself of the protection of the constitutional
amendment submitted to and adopted by a majority
of the electors at the November election, 1913,
making women eligible to appointment to the posi-
tion in question, because that amendment did not
become a part of the constitution until the 1st day

of January, 1914. Section 1 of Article XVI of the Constitution authorizes the general assembly to propose amendments to the constitution. It contains this language: "If the majority of the electors voting on the same shall adopt such amendments the same shall become a part of the constitution." It is true that in the resolution of the general assembly (103 O. L., 992), under which the amendment under consideration was submitted to the electors, it was provided that if a majority of the electors voting on the amendment should adopt the same it should become a part of the constitution on and after the 1st day of January, 1914. There is nothing in the constitution which authorizes such a postponement on the part of the general assembly. The constitution is positive in its terms and provides that the amendment shall become a part of the constitution when a majority of the electors voting on the same shall adopt it. The time when an amendment is to become effective can be submitted to the electors, as in the case of the amendments of 1912 wherein it was expressly provided when they should go into effect, but in the case under consideration all that was submitted to the people was: "Article XV, Section 4. Eligibility of women to appointment as members of boards of, or positions in, department and institutions affecting, or caring for, women and children." In some of the states the time when an amendment shall go into effect is postponed by the constitution to a date later than its adoption, as in the state of New York where it is provided that an amendment shall become a part of the con-

stitution from and after the 1st day of January next after its approval. There is nothing in the constitution of this state postponing the operation of an amendment and it cannot be postponed unless the proposition to postpone is submitted to the electors and is adopted by a majority of those voting thereon. So it is clear to us that the relatrix was eligible to appointment to the office on the 23d day of December, 1913.

It is the contention of counsel for the defendants that relatrix is confronted by the provisions of the first civil service act (103 O. L., 698), which went into effect on the 1st day of January, 1914. It is not insisted, however, nor can it be successfully claimed, that this act abolished the office of chief matron of the girls' industrial school. Section 2 of this civil service act provides that on and after January 1, 1914, appointments to and promotions in the civil service of the state and the counties, cities and city school districts thereof shall be made only according to merit and fitness to be ascertained as far as practicable by examination. At the time this law became effective the relatrix had been appointed and was the legal incumbent of an office which had been fixed by statute for a term of four years, and we are of the opinion that the civil service law could not disturb her in her office or affect this particular office until the end of the term for which she was appointed, unless the office should be abolished. For the reasons we have given the petition is good on demurrer.

The answer admits that relatrix was appointed on the 1st day of August, 1913. It is to be presumed that in the enactment of Section 2101-1, General Code, which authorized her appointment as chief matron, there was a valid and constitutional exercise of legislative power. The statute was valid until there was a judicial determination to the contrary. No objection was ever made to her continuing in the position, upon the ground that the statute under which she was appointed was unconstitutional. If this statute was subject to challenge on the ground of unconstitutionality she nevertheless continued in office without objection, and when the constitutional objection was removed by the adoption of the amendment we have been considering her appointment was certainly validated.

It is alleged in the answer that she took a noncompetitive examination and that she continued in the position of chief matron until the 31st day of August, 1915, when said appointment became null and void by operation of law, and that afterwards she was authorized by the board of administration to hold the position as a provisional employe. We think these facts are immaterial and irrelevant in view of our holding that the provisions of the civil service law did not apply to the case of relatrix. Her tenure of office is referable to her appointment in 1913.

In view of the fact, therefore, that relatrix was duly and legally appointed to this office for a term of four years at a fixed salary, before the civil service laws of the state became effective, she is

entitled, without the approval of the civil service commission of the state, to that salary during the term of office and until a successor is lawfully appointed and qualified. We do not see upon what theory the civil service commission has anything to do with this office until the end of the term of relatrix, or unless the same becomes vacant. For this reason the members of the civil service commission are not proper parties to this proceeding and cannot be required to approve the item of her salary, but it is the duty of the auditor of state to issue a warrant in her favor upon the treasurer of state for her salary when approved by the Ohio board of administration. The members of the state civil service commission are therefore dismissed from this proceeding and a peremptory writ in mandamus is allowed against the auditor of state.

*Writ allowed.*

NICHOLS, C. J., JOHNSON and DONAHUE, JJ., concur.

WANAMAKER, J., concurs in the judgment.

MATTHIAS, J., dissenting. I cannot concur in the judgment in this case. While assenting to the general rule stated in the several propositions of the syllabus, the facts of this case are such, in my opinion, as to exempt it from the operation of the rule stated in the fourth and fifth propositions thereof.

The majority regard the averments of the answer as immaterial in view of the conclusion that the civil service law cannot apply to the case of the relatrix. Assuming the correctness of the conclusion of the majority as to the sufficiency of the petition, I cannot agree that the averments of the answer may be disregarded. The substance of the answer is quite fully set out in the statement of facts preceding the majority opinion and need not be here repeated.

The first civil service law which in any manner affected the position here in question became operative August 10, 1913, ten days subsequent to the appointment of the relatrix. Some time thereafter, the date not being stated in the answer, she took a noncompetitive examination under the provisions of Section 486-10, General Code (103 O. L., 703), which she successfully passed, receiving an average grade of 83.3, and continued in her position as a civil service appointee. The pleading does not disclose whether the noncompetitive examination, as a result of which the relatrix entered the classified service, was taken before or after the adoption of the amendment to the constitution, which it is now held validated her appointment as chief matron, but it is quite clear that she continually and consistently treated her tenure of office as being under the civil service and that she sought and secured all the rights and benefits of the laws, rules and regulations governing the classified service.

On September 9, 1915, the Ohio board of administration announced its conclusion to retain the

relatrix in the position of chief matron as a provisional appointee, pending the certification of an eligible list from which a permanent appointment could be made, and on March 4, 1916, when the names of persons who were eligible for permanent appointment to said position were certified, the name of the relatrix, under the provisions of the statute, the benefits of which she had sought and secured, was certified along with the list of three persons who had passed a competitive examination. From the time the relatrix voluntarily entered the classified service, vouchers for her pay had been submitted to, and had received the approval of, the state civil service commission, the authority of that board being at no time questioned until the bringing of this suit. The relatrix voluntarily placed herself in the classified service, thereby seeking and receiving its benefits, and she should not be permitted to shift her position and again claim tenure under an appointment for a fixed term.

JONES, J., concurs in the dissenting opinion.